**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| JAMAAL L. TINSLEY, an Individual,    ) | |
|        ) | |
|     Plaintiff,    ) | |
|        ) | |
|     vs.    ) | CASE NO. |
|        ) | |
| IAM SPORTS & ENTERTAINMENT, INC.,    ) | |
| RAYMOND BROTHERS, an Individual,    ) | |
| JPMORGAN CHASE BANK, N.A., WILLIAM    ) | |
| KENNEDY,  ERIKA  BLUME, an Individual,    ) | |
| JENNIFER BURR, an Individual, ELITE    ) | |
| SERVICES, and JOHN DOES 1-10.    ) | |
|        ) | |
|     Defendants.    ) | |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff, JAMAAL L. TINSLEY, an individual ("TINSLEY") by counsel

Theodore J. Minch, and for his Complaint for Damages against each and every one of the above

named Defendants, does hereby allege as follows:

**I.      THE PARTIES.**

1.      TINSLEY is a professional basketball player who played professionally in the

National Basketball Association (the "NBA") for eleven (11) seasons for the Indiana Pacers

(July, 2001 - July, 2009), the Memphis Grizzlies (2009-2010), and the Utah Jazz (2011 - 2013).

During his employment with the Pacers, TINSLEY resided in Carmel and Indianapolis, Indiana

(the Southern District of Indiana).

2.      Defendant IAM SPORTS & ENTERTAINMENT, INC. ("IAM") is a sports and

entertainment agency, owned and managed by Defendant RAYMOND BROTHERS, organized

and existing under the laws of the State of California, and located at 30101 Agoura Court, No.

220, Agoura Hills, California 91301.  IAM represented TINSLEY as TINSLEY's attorney and agent during all times relevant to the actions complained of herein.

3.     Defendant RAYMOND BROTHERS ("BROTHERS") is a sports and entertainment agent who, upon information and belief, solely owns, operates, and manages IAM. Upon information and belief, Brothers is currently a resident of the State of California, and located at 30101 Agoura Court, No. 220, Agoura Hills, California 91301.  BROTHERS represented TINSLEY as TINSLEY's attorney and agent during all times relevant to the actions complained of herein.

4.     Defendant JPMORGAN CHASE BANK, N.A. ("CHASE") doing business as Chase Bank, is a national bank that constitutes the consumer and commercial banking subsidiary of the U.S. multinational banking and financial services holding company, JPMorgan Chase; it is a Delaware corporation with its headquarters located at 270 Park Avenue, New York, New York 1001.  In all matters related to the allegations contained herein, CHASE served as the trustee for the Jamaal Tinsley Revocable Trust (the "Trust") and was TINSLEY's primary (if not sole) banking institution, responsible for managing TINSLEY's multiple various accounts and TINSLEY's wealth and assets.

5.     Defendant WILLIAM KENNEDY ("KENNEDY"), an individual is an employee of CHASE in CHASE's private client banking group located in the Indianapolis office of CHASE at 111 Monument Circle, Indianapolis, Indiana 46204.  At all times relevant to the claims made herein, KENNEDY was the Trust Officer of the Trust and, likewise, was TINSLEY's primary financial manager and planner at CHASE, responsible for the management and distribution of TINSLEY's assets and wealth and was TINSLEY's day to day contact at

2

CHASE.  Likewise, together with the others named herein, KENNEDY was primarily responsible for managing and overseeing Tinsley's multiple various CHASE accounts.

6.     Defendant ERIKA BLUME ("BLUME"), an individual, is an employee of CHASE in CHASE's private client banking group located in the Indianapolis office of CHASE at 111 Monument Circle, Indianapolis, Indiana 46204.  At all times relevant to the claims made herein, BLUME was one of the named Trust Officers of the Trust and, likewise, was, together with others named in this action, one of TINSLEY's financial managers and planners, responsible for the management and distribution of TINSLEY's assets and wealth and was one of TINSLEY's day to day contacts at CHASE.  Likewise, together with the others named herein, BLUME was responsible for managing and overseeing TINSLEY's multiple various CHASE accounts.

7.     Defendant JENNIFER BURR ("BURR"), an individual , at all times relevant to this action, is an individual who was employed by TINSLEY as TINSLEY's housekeeper. Upon information and belief, BURR resides in this judicial district at 2731 Shirley Drive Indianapolis, Indiana 46222.

8.     Defendant ELITE SERVICES ("ELITE") is, upon information and belief, an unincorporated entity, owned and operated by BURR, and is likewise located in this judicial district at 2731 Shirley Drive, Indianapolis, Indiana 46222.

9.     Upon information and belief, Defendants JOHN DOES 1-10 are individuals and/or legal persons whose identities and contact information may be known by each and/or any one of the Defendants and which persons who were contracted for or who, in fact, oversaw TINSLEY's assets and wealth for and on behalf of TINSLEY.

## II.        JURISDICTION AND VENUE.

10.        This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121    U.S.C. § 1961 *et seq.*, U.S.C. §1341 and U.S.C. § 1343, and has subject matter jurisdiction over the state law claims under 18 U.S.C. § 1961 et. seq. because these claims are joined with substantial and related claims under the RICO Act.

11.        This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because TINSLEY and each and every one of the Defendants are citizens of different states and the amount in controversy exceeds $75,000.

12.        This Court has personal jurisdiction over each and every one of the Defendants because, on information and belief, each and every one of the Defendants:  (a) conducts substantial business in Indiana and in this judicial district; (b) has substantial, continuous, and systematic contacts with Indiana; and (c) purposefully avails themselves of the benefits and protections of Indiana's laws.  Specifically, on information and belief, each and every one of the Defendants has conducted extensive business in Indiana and, moreover, has caused injury to TINSLEY by a series of acts performed in Indiana and has also caused injury to TINSLEY in Indiana resulting from a series of acts done outside of the state.

13.        Furthermore, TINSLEY's contact with each and every one of the Defendant's relevant to this action has been based in Indiana, where TINSLEY maintained his residence and place of employment during the time of each and every  one of the Defendant's acts as

4

complained of in this action. Moverover, the exercise of jurisdiction over each and every one of the Defendants is permitted by the Indiana long arm statute and comports with due process.

14.     Venue in this judicial district is proper under 28 U.S.C. § 1391 because each and every one of the Defendants committed a substantial portion of the acts complained of in this district, each and every one of Defendants' conduct caused harm to TINSLEY in this district, and each and every one of the Defendants transacts extensive business within Indiana.

### III.     FACTUAL ALLEGATIONS.

15.     In or about April, 2001, prior to being drafted by the Vancouver Grizzlies in the 2001 NBA draft, TINSLEY retained IAM and BROTHERS as TINSLEY's agent and attorney pursuant to a certain agreement between BROTHERS and/or IAM, , and TINSLEY.

16.     BROTHERS was a licensed attorney in Louisiana from October, 1996 until June 1, 2017 and IAM and BROTHERS are certified by the NBA as a sports agent; BROTHERS, however, is not licensed to practice law in California or Indiana, and, upon information and belief, is no longer licensed to practice law in Louisiana.

17.      IAM and / or BROTHERS were TINSLEY's agent in negotiating and concluding TINSLEY's NBA playing contracts and other ancillary contracts such as for endorsements and/or the commercial use of TINSLEY's name, image, and likeness.

18.     TINSLEY specifically chose  IAM and / or BROTHERS as his agent because TINSLEY understood  BROTHERS was also a licensed attorney and could act as such on behalf of TINSLEY.

19.     In 2004, TINSLEY opened banking accounts and the Trust at Bank One in Indianapolis, Indiana.[1]

20.     TINSLEY's assets at CHASE included checking and savings accounts and the Trust, of which CHASE was the named trustee and KENNEDY, BLUME, and were trust officers; the Trust had two different account numbers, numbers 2800283000 and R57227002 between 2004 - 2014.

21.     The terms governing TINSLEY's accounts and the Trust were contained in written agreements between TINSLEY and CHASE (at the time Bank One).

22.     CHASE's creation of the Trust and the opening of TINSLEY's accounts created a fiduciary obligation to TINSLEY by CHASE.

23.     At all times that CHASE held and purported to manage TINSLEY's assets and wealth, pursuant to certain trust and/or account agreements, KENNEDY and BLUME as well as, upon information and belief, certain other as yet unnamed/unknown persons (i.e. -- DOES 1-10), purported to transact business (including but not limited to the payment of invoices, maintaining and updating TINSLEY's insurance, tax planning, providing investment advice, and investment of funds) on TINSLEY's behalf.

24.     Functionally, at the advice of CHASE as TINSLEY's wealth and asset manager and as trustee of the Trust, monies paid to TINSLEY by the teams for which TINSLEY played were direct deposited to CHASE and CHASE, in turn, would move portions of those monies to

---

[1] Bank One later merged with JPMorgan Chase Bank, N.A. (CHASE) and TINSLEY's accounts were held at CHASE until 2014.

the Trust and CHASE would then pay IAM and / or  BROTHERS and BURR and/or ELITE;

TINSLEY's "allowance" was paid from TINSLEY's accounts.

25.     Between December, 2004 and October, 2014, CHASE benefitted, to TINSLEY's

detriment, from charging administrative fees as to the Trust and TINSLEY's bank accounts and

by charging TINSLEY tax preparation fees.

26.     CHASE, KENNEDY, BLUME, and DOES also wrongfully benefitted from

arranging second and third mortgages on homes owned by TINSLEY at interest rates that far

exceeded the standard rates of the day for said mortgages.

27.     In July, 2009, the Pacers bought out TINSLEY's playing contract with the amount

of the buyout being paid over two years (September, 2009 - August, 2011).

28.     Consistent with the manner in which TINSLEY's salary had been paid by the

Pacers, the buyout payments were made directly to CHASE, to be administered on behalf of

TINSLEY, by the Pacers.

29.     The buyout amount was paid over two years from September 2009 until August

2011; according to the NBA's Collective Bargaining Agreement (the "CBA"), the buyout is a

liquidated damage for the breach of contract by the Pacers and should not be considered a salary

for purposes of paying agent fees to  IAM and / or BROTHERS yet  IAM and / or BROTHERS

continued to take his fees from these monies.

30.     Specifically,  IAM and / or BROTHERS was paid over $450,000 between

September 2009 and August 2011 on money paid to TINSLEY as liquidated damages for the

Pacers' breach of contract; even if the CBA did not control, the monies paid by the Pacers to

TINSLEY during this time was not a "salary" because TINSLEY, at the time, was no longer an employee of the Pacers when he received the buyout money and was, in fact, an employee of the Memphis Grizzlies for the 2009-2010 season.

31.    Between January 2006 and August 2011,  IAM and / or BROTHERS was paid over $1,400,000 as TINSLEY's attorney and agent.  Included in those monies were payments of $41,513.79 for, according to CHASE records, were (a) "car loan repayment," (b) $22,000 for "loan repayment for Jamaal Tinsley," and (c)b an "additional one-time fee" of $2,874.96 and payment of  IAM and / or BROTHERS' cell phone bills in of $6,927.87.

32.    As his attorney and agent, TINSLEY repeatedly requested IAM and / or BROTHERS' legal services counsel and advice related to financial and other matters; TINSLEY's requests were ignored by  IAM and / or BROTHERS.

33.    Between November 1, 2004, and June 6, 2012, BURR and ELITE sent invoices directly to CHASE's trust employees (KENNEDY, BLUME, and / or DOES); CHASE, KENNEDY, BLUME, and / or DOES made payments from the Trust to BURR and ELITE, on the invoices tendered by BURR and ELITE; the invoices tendered by BURR and ELITE included charges for items other than cleaning services and which charges (and corresponding payments) were not expressly authorized by TINSLEY.

34.    CHASE, KENNEDY, BLUME, and / or DOES did not provide TINSLEY with the invoices submitted by BURR and / or ELITE prior to making payment on the same; likewise, CHASE, KENNEDY, BLUME, and / or DOES made no attempt to validate or determine whether the charges submitted by BURR and / or ELITE were legitimate.

35.    For example, charges on the BURR and ELITE invoices included items such as "Painting of 20 Rooms, scaffolding, house cleaning."  TINSLEY did not own a home which BURR and / or ELITE were contracted by TINSLEY for cleaning services with that many rooms; yet CHASE, KENNEDY, BLUME, and / or DOES authorized payment on this and at least two (2) additional invoices for painting without question despite BURR and / or ELITE's services being limited only to home cleaning services.

36.    Payments to IAM and / or BROTHERS and BURR and / or ELITE were made from TINSLEY's accounts with CHASE and, likewise, were paid by CHASE, KENNEDY, BLUME, and / or DOES without TINSLEY's approval or authorization.

37.    CHASE, KENNEDY, BLUME, and / or DOES did not exercise due care and diligence in paying items that, on their face, appear to be unauthorized especially where payments for these items are evenly rounded numbers that claim to be for purchases of products and / or services not related to home cleaning.

38.    Despite their fiduciary obligations to TINSLEY as trustee of the Trust and / or their fiduciary obligations to TINSLEY as managers of TINSLEY's accounts, CHASE, KENNEDY, BLUME, and / or DOES failed to notify TINSLEY that BURR and / or ELITE increased their rates on their home cleaning services by 150% and BURR's hourly pay by almost 67% at approximately the same time so that TINSLEY could choose whether he wanted to authorized payment on such invoices much less continued his employment of BURR and / or ELITE.

39.    As further evidence of their breach of fiduciary duty to TINSLEY, CHASE, KENNEDY, BLUME, and / or DOES paid BURR and / or ELITE on an invoice tendered by

BURR and / or ELITE for "an estimate for a new computer" rather than an invoice on an actual computer.

40.     Other invoices paid by CHASE, KENNEDY, BLUME, and / or DOES to BURR and / or ELITE without TINSLEY's knowledge or authorization included but were not limited to payments for trips (some of which appear to be double charged), moving expenses, furniture, and what appear to be double charges for some trips.  And, CHASE, KENNEDY, BLUME, and / or DOES paid more than $280,000 to BURR and / or ELITE after TINSLEY no longer owned a home in Indiana for BURR and / or ELITE to clean for TINSLEY.

41.     As trustees for the Trust and as TINSLEY's personal financial managers, CHASE, KENNEDY, BLUME, and / or DOES had a duty to question invoices tendered to CHASE, KENNEDY, BLUME, and / or DOES by IAM and / or BROTHERS, BURR, and / or ELITE but did not; as such, CHASE, KENNEDY, BLUME, and / or DOES breached their fiduciary duties to TINSLEY.

## COUNT I
## BREACH OF CONTRACT
### (IAM and BROTHERS)

42.     TINSLEY repeats and realleges the allegations in Paragraphs 1 through 41. herein.

43.     TINSLEY engaged the services of IAM and / or BROTHERS as TINSLEY's agent and attorney pursuant to a written agreement dated April, 2001.

44.     The agreement between IAM and / or BROTHERS and TINSLEY was a valid, enforceable written contract governing the terms of IAM and / or BROTHERS' work as TINSLEY's attorney and agent for at least the period 2001 - 2011.

45.     By way of IAM and / or BROTHERS' solicitation of unauthorized payments as herein complained of from CHASE as well as the unauthorized payment of certain "loans" and a portion of the liquidated damages paid to TINSLEY by the Pacers, IAM and / or BROTHERS materially breached the agreement between IAM and / or BROTHERS and TINSLEY.

46.     TINSLEY has been and continues to be irreparably damaged as a direct and proximate result of IAM and / or BROTHERS' and / or IAM's breach of contract under Indiana law.

47.     As a result of IAM and / or BROTHERS' ongoing and uncured breach of contract as alleged herein, TINSLEY's damages continue to accumulate and accrue and TINSLEY has therefore been irreparably damaged as a proximate result of IAM and / or BROTHERS' breach of contract.

48.     TINSLEY's damages as a direct and proximate result of IAM and / or BROTHERS' breach of contract as herein complained of are as yet incalculable and continue to accumulate and accrue.

## COUNT II
## BREACH OF CONTRACT
### (CHASE, KENNEDY, BLUME, and / or DOES)

49.     TINSLEY repeats and realleges the allegations in Paragraphs 1 through 48. herein.

50      In 2004, TINSLEY engaged the services of CHASE and, on behalf of CHASE, KENNEDY, BLUME, and / or DOES, to act as trustees of the Trust and to act in TINSLEY's best interests as TINSLEY's financial advisers and planners pursuant to a written agreement.

51.     The agreement, including but not limited, the Trust, between CHASE, KENNEDY, BLUME, and / or DOES and TINSLEY was a valid, enforceable written contract

governing the terms of CHASE, KENNEDY, BLUME, and / or DOES' work as TINSLEY's

bankers and financial and investment advisers for at least the period 2004 - 2014.

52.     By way of CHASE, KENNEDY, BLUME, and / or DOES' acts as complained of

herein, including but not limited to the payment of unauthorized invoices, the mismanagement of

TINSLEY's funds, and the engagement in transactions that were, on their face, injudicious,

CHASE, KENNEDY, BLUME, and / or DOES materially breached the agreements, including

but not limited to the Trust, between CHASE, KENNEDY, BLUME, and / or DOES and

TINSLEY.

53.     TINSLEY has been and continues to be irreparably damaged as a direct and

proximate result of CHASE, KENNEDY, BLUME, and / or DOES' breach of contract under

Indiana law.

54.     As a result of CHASE, KENNEDY, BLUME, and / or DOES' ongoing and

uncured breach of contract as alleged herein, TINSLEY's damages continue to accumulate and

accrue and TINSLEY has therefore been irreparably damaged as a proximate result of CHASE,

KENNEDY, BLUME, and / or DOES' breach of contract.

55.     TINSLEY's damages as a direct and proximate result of CHASE, KENNEDY,

BLUME, and / or DOES' breach of contract as herein complained of are as yet incalculable and

continue to accumulate and accrue.

## COUNT III
## BREACH OF CONTRACT
### (BURR AND ELITE)

56.     TINSLEY repeats and realleges the allegations in Paragraphs 1 through 55. herein.

57.     In November, 2004, TINSLEY engaged the services of BURR and / or ELITE, to act as TINSLEY's house keeper pursuant to an agreement between TINSLEY and BLUME and / or ELITE.

58.     The agreement between BURR and / or ELITE and TINSLEY was a valid, enforceable contract governing the terms of BURR and / or ELITE's work as TINSLEY's housekeeper for at least the period November 1, 2004, and June 6, 2012.

59.     By way of BURR and / or ELITE's acts as complained of herein, including but not limited to obtaining funds from CHASE, KENNEDY, BLUME, and / or DOES for goods and services outside the scope of BURR and / or ELITE's engagement materially breached the agreement between BURR and / or ELITE and TINSLEY.

60.     TINSLEY has been and continues to be irreparably damaged as a direct and proximate result of BURR and / or ELITE's breach of contract under Indiana law.

61.     As a result of BURR and / or ELITE's ongoing and uncured breach of contract as alleged herein, TINSLEY's damages continue to accumulate and accrue and TINSLEY has therefore been irreparably damaged as a proximate result of BURR and / or ELITE's breach of contract.

62.     TINSLEY's damages as a direct and proximate result of BURR and / or ELITE's breach of contract as herein complained of are as yet incalculable and continue to accumulate and accrue.

## COUNT IV
## MALPRACTICE
### (IAM and BROTHERS)

63.     TINSLEY repeats and realleges the allegations in Paragraphs 1 through 62. herein.

64. As alleged herein, in or about April, 2001, pursuant to a written agreement, TINSLEY engaged the services of IAM and / or BROTHERS as TINSLEY's attorney and agent.

65. By of IAM and / or BROTHERS' acts and / or omissions, as herein complained of, IAM and / or BROTHERS failed to exercise the ordinary skill and knowledge possessed by lawyers in the representation of their clients.

66. IAM and / or BROTHERS' acts and / or omissions as herein complained of is the proximate cause of TINSLEY's damages which damages include but are not limited to the unauthorized monies paid to IAM and / or BROTHERS from the Trust and / or TINSLEY's CHASE account(s) by CHASE, KENNEDY, BLUME, and / or DOES.

67. TINSLEY's damages as a direct and proximate result of IAM and / or BROTHERS' failure to exercise the ordinary skill and knowledge possessed by lawyers in the representation of their clients as herein complained of are as yet incalculable and continue to accumulate and accrue.

## COUNT V
## ATTORNEY MISCONDUCT
### (IAM and BROTHERS)

68. TINSLEY repeats and realleges the allegations in Paragraphs 1 through 67. herein.

69. As alleged herein, in or about April, 2001, pursuant to a written agreement, TINSLEY engaged the services of IAM and / or BROTHERS as TINSLEY's attorney and agent.

70. Acting pursuant to the written agreement between TINSLEY and IAM and / or BROTHERS, IAM and / or BROTHERS negotiated Tinsley's playing contracts, one (1) of which was a 6 year contract (with the Pacers), and, in turn, IAM and / or BROTHERS was paid over $1.3 million.

71.     The total payments to IAM and / or BROTHERS in the amount of over $1.4 million constitutes excessive fees charged by an attorney, a violation of Rule 1.5 of the Rules of Professional Conduct in both Indiana, in which jurisdiction IAM and / or BROTHERS represented TINSLEY and Louisiana, where BROTHERS was licensed.

72.     By charging TINSLEY for a loan that never existed and by having CHASE, KENNEDY, BLUME, and / or DOES pay IAM and / or BROTHERS' cell phone bills, IAM and / or BROTHERS committed a criminal act as stated in the above counts.

73.     By taking payments in excess of 4% of the payments made to CHASE, KENNEDY, BLUME, and / or DOES by the Pacers on TINSLEY's playing contract with the Pacers for the 2005-2006 season, IAM and / or BROTHERS breached the CBA that BROTHERS, pursuant to his written agreement with TINSLEY, was required to follow.

74.     Moreover, by failing to explain to TINSLEY that the payments from his buyout agreement with the Pacers constituted liquidated damages rather than a salary for which IAM and / or BROTHERS could receive an agent fee.

75.     To this end, IAM and / or BROTHERS acted in their own best interests and for their own personal gain instead of in the best interests of TINSLEY, their client, and, as such, IAM and / or BROTHERS' actions constitute an act of dishonesty under Indiana law.

76.     Also, by failing to advise TINSLEY of the necessity to seek counsel properly licensed in Indiana to represent TINSLEY's interests as to the illegal activities engaged in by CHASE, KENNEDY, BLUME, and / or DOES and / or BURR and / or ELITE, and by leading TINSLEY to believe that IAM and / or BROTHERS was acting as his attorney at law and in fact, IAM and / or BROTHERS' actions constitute attorney misconduct.

77.     TINSLEY has been irreparably harmed as a proximate result of IAM and / or BROTHERS' misconduct as alleged herein.

### COUNT VI
### BREACH OF FIDUCIARY DUTY
### (IAM and BROTHERS)

78.     TINSLEY repeats and realleges the allegations in Paragraphs 1 through 77. herein.

79.     IAM and / or BROTHERS owed TINSLEY a fiduciary duty to act at all times in good faith and in TINSLEY's best interests, and had a duty, among other things, to perform the services for which IAM and / or BROTHERS were retained with reasonable care and skill, to act in TINSLEY's highest and best interests at all times.

80.     IAM and / or BROTHERS never repudiated the fiduciary duty owed to TINSLEY as a result of TINSLEY's engagement of IAM and / or BROTHERS as TINSLEY's attorney and agent.

81.      Specifically, IAM and / or BROTHERS breached their fiduciary duty to TINSLEY by failing to inform TINSLEY that IAM and / or BROTHERS would not take action to assist TINSLEY in a legal matters related to the illegal actions in which CHASE, KENNEDY, BLUME, and / or DOES were alleged to have engaged in as herein complained of.

82.     By failing to communicate with TINSLEY in response to TINSLEY's requests in the foregoing regard, TINSLEY believed, in good faith, that IAM and / or BROTHERS was TINSLEY's attorney in fact and at law with regard to these matters.

83.     Further, IAM and / or BROTHERS' actions in taking monies to which IAM and / or BROTHERS was not entitled, as alleged herein, IAM and / or BROTHERS breached the fiduciary duty owed to TINSLEY by IAM and / or BROTHERS.

84.     Furthermore, by engaging in all of the herein described acts and omissions constituting IAM and / or BROTHERS' breach of their fiduciary duties owed to TINSLEY, TINSLEY sustained damages, including but not limited to, the fees and / or costs paid to IAM and / or BROTHERS by TINSLEY and / or the unauthorized payments received by IAM and / or BROTHERS from CHASE, KENNEDY, BLUME, and / or DOES.

85.     TINSLEY sustained further and additional economic and out of pocket losses and damages to be presented at trial, all according to proof.

86.     The acts and omissions constituting breach of IAM and / or BROTHERS' fiduciary duties were committed with oppression, fraud and / or malice and, as a result, TINSLEY, in addition to actual damages, may recover punitive damages.

**COUNT VII**
**BREACH OF FIDUCIARY DUTY**
**(CHASE, KENNEDY, BLUME, and / or DOES)**

87.     TINSLEY repeats and realleges the allegations in Paragraphs 1 through 86. herein.

88.     CHASE, KENNEDY, BLUME, and / or DOES owed TINSLEY a fiduciary duty to act at all times in good faith and in TINSLEY's best interests, and had a duty, among other things, to perform the services for which CHASE, KENNEDY, BLUME, and / or DOES were retained with reasonable care and skill, to act in TINSLEY's highest and best interests at all times.

89.     CHASE, KENNEDY, BLUME, and / or DOES never repudiated the fiduciary duty owed to TINSLEY as a result of TINSLEY's engagement of CHASE, KENNEDY, BLUME, and / or DOES as TINSLEY's professional financial advisers and wealth managers.

90.     In fact, in soliciting TINSLEY's business, CHASE, KENNEDY, BLUME, and / or DOES held themselves out to be the preeminent financial advisers and wealth managers in the

world and promised TINSLEY that it would protect TINSLEY's assets and wealth from misuse

and / or fraudulent transactions that would (and, in this Case, did) result in harm to TINSLEY.

91.     Moreover,  CHASE, KENNEDY, BLUME, and / or DOES had a fiduciary duty to

TINSLEY that was created by means of their positions as trustees over The Trust.

92.      Specifically, CHASE, KENNEDY, BLUME, and / or DOES breached their

fiduciary duty to TINSLEY by failing to exercise reasonable care and diligence in the protection

of TINSLEY's assets and wealth from misuse and / or fraudulent transactions.

93.     Further, CHASE, KENNEDY, BLUME, and / or DOES' actions in paying monies

to IAM and / or BROTHERS and / or BURR and / or ELITE was not entitled, as alleged herein,

breached the fiduciary duty owed to TINSLEY by CHASE, KENNEDY, BLUME, and / or

DOES.

94.     Payments made from the Trust demonstrate that CHASE, KENNEDY, BLUME,

and / or DOES were aware or certainly should have been ware that BURR and / or ELITE were

merely TINSLEY's housekeeper though, on their face, unauthorized payments to BURR and / or

ELITE were for goods and  / or services outside the scope of BURR and / or ELITE's role as

TINSLEY's housekeepers..

95.     CHASE, KENNEDY, BLUME, and / or DOES breached their fiduciary duty to

TINSLEY by neglecting its duty to verify that duplicate payments were not being made from

TINSLEY's CHASE accounts and / or the Trust.

96.     CHASE, KENNEDY, BLUME, and / or DOES breached its fiduciary duty in not

properly advising TINSLEY about financial matters, by refusing to allow him to invest in

opportunities that he wanted to invest in, and by investing and selling his funds in a manner that served to generate higher fees being paid to CHASE.

97.    Furthermore, by engaging in all of the herein described acts and omissions constituting CHASE, KENNEDY, BLUME, and / or DOES' breach of their fiduciary duties owed to TINSLEY, TINSLEY sustained damages, including but not limited to, the fees and / or costs paid to CHASE, KENNEDY, BLUME, and / or DOES and / or the unauthorized payments paid by CHASE, KENNEDY, BLUME, and / or DOES to IAM and / or BROTHERS and / or BURR and / or ELITE.

98.    TINSLEY sustained further and additional economic and out of pocket losses and damages to be presented at trial, all according to proof.

99.    The acts and omissions constituting breach of CHASE, KENNEDY, BLUME, and / or DOES' fiduciary duties were committed with oppression, fraud and / or malice and, as a result, TINSLEY, in addition to actual damages, may recover punitive damages.

## COUNT VIII
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT; MAIL FRAUD AND WIRE FRAUD
### (IAM, BROTHERS, CHASE, KENNEDY, BLUME, and DOES)

100.    TINSLEY repeats and realleges the allegations in Paragraphs 1 through 27. herein.

101.    The Racketeer Influenced and Corrupt Organizations Act ("RICO"), located at 18 U.S.C. § 1961 *et seq*., provides that it is unlawful for a person to use income derived from engaging in a pattern of racketeering activity which may include mail fraud and wire fraud.

102.    A pattern of racketeering activity requires at least two acts that occurred less than 10 years apart.

103.    A plaintiff injured by a violation of the RICO Act "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."  U.S.C. § 1964.

104.    IAM and / or BROTHERS provided billing information on supposed loans and BROTHERS' personal cell phone bills to CHASE, KENNEDY, BLUME, and / or DOES for payment from TINSLEY's accounts.

105.    These invoices were sent via mail or via electronic communication and furthered IAM and / or BROTHERS' intent to defraud TINSLEY.

106.    IAM and / or BROTHERS continued to invoice and take money from Tinsley's trust account for alleged "agent fees" from September 2009 through August of 2011 when the money TINSLEY from the Pacers was not a salary to which IAM and / or BROTHERS were entitled to fees by virtue of the terms of the CBA.

107.    Despite IAM and / or BROTHERS' knowledge that he was not entitled to the collection of the fees and costs billed to CHASE, KENNEDY, BLUME, and / or DOES for payment out of TINSLEY's accounts, payment of these funds were made by CHASE through the mail or electronically from CHASE.

108.    TINSLEY was injured by IAM and / or BROTHERS' and / or CHASE, KENNEDY, BLUME, and / or DOES's malfeasance and, as such, TINSLEY is entitled to treble damages, costs of this action, and attorney's' fees.

**COUNT IX**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT;**
**MAIL FRAUD AND WIRE FRAUD**
**(BURR and ELITE)**

109.    TINSLEY repeats and realleges the allegations in Paragraphs 1 through 108.

herein.

110.    BURR and / or ELITE knowingly provided fraudulent invoices to CHASE,

KENNEDY, BLUME, and / or DOES for payment from Tinsley's account.

111.    These billing statements were sent via mail or via electronic communication and

furthered BURR and / or ELITEs intent to defraud TINSLEY.

112.    TINSLEY was injured by the BURR and / or ELITE's malfeasance and, as such,

TINSLEY is entitled to treble damages, costs of this action, and attorney's' fees.

## IV.    DEMAND FOR JURY TRIAL.

113.     TINSLEY hereby demands a trial by jury of all issues that may be tried to a jury

in this action.

## V.        PRAYER FOR RELIEF.

WHEREFORE, TINSLEY asks for a judgment as against each and every one of the Defendants as follows:

      a.        An award of all damages TINSLEY has sustained as a consequence of each and every one of Defendant's acts as complained of by Tinsley herein;

      b.        That each and every one of the Defendants be ordered to account to TINSLEY for, and disgorge, all profits they have derived by reason of the unlawful acts complained of herein;

      c.        That each and every one of the Defendants be ordered to pay TINSLEY's reasonable attorneys' fees, prejudgment interest, and costs of this action under 18 U.S.C. § 1961 *et seq*.;

      d.        That TINSLEY be awarded such other and further relief as the Court may deem just and the circumstances warrant.

Dated:  Indianapolis, Indiana                 SOVICH MINCH, LLP,
        August 14, 2017

                                  /s/ *Theodore J. Minch*
                                  _____
                                  Theodore J. Minch (IN18798-49)
                                  445 North Pennsylvania, Suite 605
                                  Indianapolis, Indiana 46204
                                  Tel:  (317) 335-3601
                                  Email:  tjminch@sovichminch.com

                                  *Attorneys for Jamaal L. Tinsley*