UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMAAL L. TINSLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 1:17-cv-2780-WTL-TAB |
| | ) |
| IAM SPORTS & ENTERTAINMENT, INC., | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## ENTRY ON MOTION TO ENFORCE SETTLEMENT AGREEMENT

This cause is before the Court on the Motion to Enforce Settlement Agreement filed by Defendants JPMorgan Chase Bank, N.A., Erika Blume, and William Kennedy (hereinafter referred to collectively as the "Chase Defendants") (Dkt. No. 28). The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below.

### I. BACKGROUND

#### A. Facts Asserted in Tinsley's Amended Complaint

Plaintiff Jamaal Tinsley is a professional basketball player who played in the NBA for eleven seasons. He played for the Indiana Pacers from July 2001 to July 2009 and resided in Carmel, Indiana during that time.

Tinsley alleges the following in his Amended Complaint. Throughout his NBA career, Tinsley employed Defendants IAM Sports and Entertainment, Inc., and Raymond Brothers (collectively referred to as "the Brothers Defendants") as his agent and attorney. During his time with the Pacers, Tinsley engaged Bank One (now Defendant JPMorgan Chase Bank, N.A., and hereinafter referred to as "Chase") and Defendants William Kennedy and Erika Blume (collectively with Chase referred to as the "Chase Defendants") as wealth and asset managers. On the advice of the Chase Defendants, money paid to Tinsley by his employers was directly

deposited into Chase, which would then move portions of those funds into Tinsley's trust account. Chase also would pay the Brothers Defendants and others (including Defendants Jennifer Burr and Elite Services) (collectively referred to as "Burr"). Tinsley also would receive an "allowance" from these funds.

Tinsley alleges that the Defendants breached their contracts with and fiduciary duties to Tinsley in various ways. In his sixteen-count Amended Complaint, he asserts claims against the Chase Defendants and the Brothers Defendants for breach of contract and breach of fiduciary duty; claims for malpractice and "attorney misconduct" against the Brothers Defendants; RICO, unjust enrichment, conversion, deception, constructive fraud, and actual fraud claims against all of the Defendants; and a claim under the Indiana Crime Victims Act, Ind. Code § 34-24-3-1, against all of the Defendants.

## B. Facts Relating to the Instant Motion

In 2004, Tinsley executed an Assignment of Life Insurance Policy as Collateral form (the "Assignment") which assigned to Chase (then Bank One) a life insurance policy on his life in the amount of $650,000 that had been issued by Pacific Life Insurance Company ("Pacific Life"). The Assignment stated that it was made "and the Policy is to be held as collateral security for any and all present and future liabilities of [Tinsley], or any of them, to [Chase]." Dkt. No. 28-2 ¶ D.

Counsel for the Chase Defendants (hereinafter referred to as "Defense Counsel") entered their appearance in this case on December 18, 2017. On December 28, 2017, at 1:37 p.m., Plaintiff's counsel sent an e-mail to Defense Counsel which read, in relevant part:

> [I]n the interests of time and not allowing our belief with regard to the, at best, questionable activities in which your clients have engaged as to Mr. Tinsley's affairs from the time they were entrusted with his wealth until the time they had him sign that nonsensical release which likely is not enforceable given the claims against your clients, I have been instructed by Mr. Tinsley to dismiss his claims as

2

> to your clients, *with prejudice*, should your client execute the Pacific Funds waiver in the next 48 hours.
>
> Please advise at your earliest convenience whether this offer of compromise is workable.
>
> Ironically, as you well know, your clients have no right, title, or interest to Mr. Tinsley's life insurance proceeds; so, by executing the waiver and receiving a full release from this litigation, Mr. Tinsley really gains nothing but acceleration on funds to which he was otherwise long ago entitled. I say this because the timing of our receipt of this waiver is critical. We are prepared to file a dismissal, with prejudice, under Rule 41, immediately.
>
> Please advise when you are able.

Dkt. No. 28-1 at 4 (emphasis in original). This settlement offer was made by Tinsley because he was in dire financial straits and he wished to surrender the Pacific Life insurance policy for its cash value. In order to do so, he needed Chase to execute a release of assignment form, because the assignment of the life insurance policy to Bank One/Chase was still in effect.

Exactly one hour later, Defense Counsel responded to Plaintiff's counsel's e-mail as follows:

> We disagree that our clients engaged in any questionable activities relative to Mr. Tinsley or the trust, and we're confident that Indiana's Trust Code expressly authorizes the type of release that Mr. Tinsley executed in 2014. That said, we're looking into the Pacific Life issue and understand the time-sensitive nature of the request and offer of compromise. I will endeavor to get back in touch with you tomorrow with a more definitive response to the Pac Life release issue/offer of compromise.

*Id.* at 11.

The following day, on December 29, 2017, at 2:36 p.m., Defense Counsel sent Plaintiff's counsel the following e-mail:

> I have obtained an authorized signature on the Pac Life form that will effectuate the release of the assignment to Bank One/JPMorgan.
>
> Please confirm that you/your team are in a position to and <u>will</u> file the stipulation of dismissal as to JPMorgan Chase Bank, Mr. Kennedy and Ms. Blume <u>today</u>. I will then send the si[gn]ed Pac Life form to you.

3

*Id.* at 19 (emphasis in original). After receiving no response from Plaintiff's counsel, Defense Counsel sent a follow-up e-mail on December 30, 2017, at 12:35 p.m. that read, in relevant part:

> As noted yesterday, my clients accept Mr. Tinsley's offer of compromise and are prepared to send the signed Pac Life release form to you once you confirm the timing of the dismissal with prejudice. Please advise when you expect to file that.

*Id.* at 27. Later that evening, Plaintiff's counsel responded: "Hi Paul . . . I am out of town as well and have not had luck reaching Mr. Tinsley for him to sign off on our own internal documentation. I am continuing to try to reach him." *Id.* at 35.

In a telephone call between the parties' counsel on January 9, 2018, Plaintiff's counsel indicated that Tinsley had changed his mind about the settlement offer. Nonetheless, Defense Counsel tendered the executed release to Plaintiff's counsel on January 10, 2018. When Tinsley refused to file a stipulation of dismissal as to the Chase Defendants, they filed the instant motion.

## II. **DISCUSSION**

"[A] district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Wilson v. Wilson*, 46 F.3d 660, 664 (7th Cir. 1995). An agreement to settle claims in a federal court is enforceable "just like any other contract." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007); *see also Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003) ("Settlement agreements are governed by the same general principles of contract law as any other agreement.") (citing *Ind. State Highway Comm'n v. Curtis*, 704 N.E. 1015, 1018 (Ind. 1998)). "State contract law governs issues concerning the formation, construction, and enforcement of settlement agreements." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (citations omitted). There appears to be no dispute in this case that the substantive law of Indiana applies to the issue before the Court.

The general applicable law is not in dispute:

> [T]he basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 812-813 (Ind. 2009). Whether a contract exists is a question of law. *Id.* at 813. To constitute consideration, there must be a benefit accruing to the promisor or a detriment to the promisee. *Ind. Dep't of State Revenue v. Belterra Resort Ind., LLC*, 935 N.E.2d 174, 179 (Ind. 2010), *modified on reh'g on other grounds*, 942 N.E.2d 796 (Ind. 2011). "[T]he concept of consideration encompasses any benefit—however slight—accruing to the promisor or any detriment—however slight—borne by the promisee." *Id.*

*Buskirk v. Buskirk*, 86 N.E.3d 217, 222-23 (Ind. Ct. App. 2017).

The emails quoted above establish that a contract was formed in this case. Tinsley, through his attorney, made an offer. The terms of the offer were clear—if Chase executed the Pacific funds waiver within 48 hours, Tinsley would "immediately" dismiss with prejudice his claims against the Chase Defendants. The Chase Defendants, through their attorney, accepted the offer twenty-five hours later, at which time they reported that they had performed their end of the bargain and executed the waiver form. There was a benefit accruing to Tinsley—as his attorney recognized in his initial email, having the release signed within 48 hours gave Tinsley the opportunity to receive "acceleration" of the funds from the life insurance policy, something that was "critical" to him. There was also a detriment to the Chase Defendants, as performance required quick action on their part in order to secure the necessary signature.

Tinsley argues that consideration was lacking because the proceeds from the life insurance policy lawfully belonged to him and the Chase Defendants had no right to them because the mortgages for which he asserts the policy served as collateral had been paid off years earlier. This argument is belied by Tinsley's counsel's own statement in the email containing the settlement offer, which recognizes the "gain" to Tinsley from the expediting of the signing of the release, even though, in his view, Chase had no right to the life insurance proceeds. Thus, even assuming that Tinsley is correct that Chase had a "pre-existing duty" to release the assignment of

5

the life insurance policy upon request—an obligation that is not found in the Assignment itself[1] and for which Tinsley cites no legal authority—there is nothing to support a finding that Chase had a duty to do so within the 48-hour deadline contained in the settlement offer.  It was that expedited action for which Tinsley bargained.

Tinsley also argues that the Chase Defendants' promise to execute the release was "illusory."  While Tinsley recognizes that an illusory promise is "one which by its terms makes performance entirely optional with the promisor," Dkt. No. 37 at 11, he does not actually argue that that situation existed here.  Rather, he seems to argue that the promise was "illusory" because the execution of the release alone was not enough to get Tinsley what he really wanted—the money from the policy—given that additional steps were required in order for Pacific to agree to pay Tinsley the money.  That does not make the Chase Defendants' promise to execute the release illusory; it simply means that Tinsley miscalculated the actual value of the executed form to him.  The fact that the contract was not as good of a bargain for Tinsley as he had hoped does not render the contract unenforceable.

Finally, Tinsley argues that the Chase Defendants "did not perform until after the Offer had been withdrawn," asserting:

> It is critical, here, to look at the communication of the attorneys, in their entirety.  It is clear from the undersigned's December 28, 2017 e-mail that (i) the timing of the *receipt* (emph. added) was critical and (ii) Tinsley quickly needed the case proceeds of the Policy.  It is equally clear that counsel for the Chase Defendants understood the time sensitive nature of their performance on the offer.  Again, on December 31, 2017, counsel for the Chase Defendants suggest that their clients have "accepted" the offer but yet fail to deliver the executed Release as required by the December 28, 2017 communication.

---

[1]Tinsley states that "the Chase Defendants were *obligated* (really, required) to execute the Release by virtue of the terms contained in the life insurance assignment."  Dkt. No. 37 at 11 (citing ¶ D of the Assignment Form).  Paragraph D, however, provides that the assignment "is made and the Policy is to be held as collateral security for any and all present and future liabilities of [Tinsley], or any of them, to [Chase]."  Dkt. No. 28-2.  It does not create any obligation to release the assignment at any point in time.

> It was not until January 10, 2018, *after* (emph. added) counsel for Tinsley communicated, definitively to the Chase Defendants, that Tinsley no longer was interested in settlement. Thus, contrary to the Chase Defendants' (incorrect) assertions, performance did not take place until after it was communicated to the Chase Defendants that the offer had been withdrawn.

Dkt. No. 37 at 12-13 (record citations omitted).[2] This argument is without merit. There is no question that the Chase Defendants accepted Tinsley's offer before it was withdrawn, and that they wholly performed their obligation under the parties' agreement by executing the release form within the requisite 48 hours.

### III. CONCLUSION

For the reasons set forth above, the Court finds that a valid and enforceable contract was formed when Defense Counsel communicated to Plaintiff's counsel that the Chase Defendants accepted Tinsley's offer of settlement. The Chase Defendants performed their obligation under the contract by executing the Pacific Life release form within 48 hours of Tinsley's offer. Accordingly, the Chase Defendants' motion to enforce the settlement agreement (Dkt. No. 28) is **GRANTED** and Tinsley's claims against the Chase Defendants in this case are **DISMISSED WITH PREJUDICE**. The Chase Defendants' motion seeking to supplement the record (Dkt. No. 40) is **DENIED AS MOOT**.

SO ORDERED: 6/26/18

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[2] The "emph. added" parentheticals in this quotation appear, inexplicably, in the original.